UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FAITH TEMPLE CHURCH,

                                          Plaintiff,

                                                                                      DECISION AND ORDER

                                                                                       04-CV-6355L

           v.

TOWN OF BRIGHTON, et al.,

                                          Defendants.
_____

       Plaintiff, Faith Temple Church ("Faith Temple"), commenced this action against the Town of Brighton, New York ("the Town") and certain Town officials, seeking to enjoin the Town from obtaining a certain parcel of land in Brighton through eminent domain. Faith Temple alleges that defendants' actions have violated its rights under the United States and New York State Constitutions, as well as under the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. Defendants have moved for partial summary judgment dismissing plaintiff's claims under RLUIPA. The motion is granted.

**FACTUAL BACKGROUND**

       Faith Temple is a religious congregation, which currently owns a church and related buildings on Elmwood Avenue in Brighton. Faith Temple contends that its Elmwood Avenue

property is no longer large enough to meet the needs of its growing congregation, and that it needs a larger site on which to build a new church "campus" containing a church building and auditorium, senior housing, a school, and other facilities for "faith-based" programs.

To accomplish that goal, Faith Temple began negotiating sometime in 2003 with Alan Groos to buy a 66-acre parcel of land owned by Groos ("the Groos parcel") on Westfall Road in Brighton, which is located a few miles from its present site. The Groos parcel is immediately east of a 49-acre parcel of parkland ("the Park") owned by the Town.

In its Comprehensive Plan, however, as updated in 2000, the Town had recommended acquiring the Groos parcel in order to permit expansion of the Park. The Town had also engaged in some discussions with Groos concerning the Town's desire to purchase the parcel from Groos, but the Town and Groos were unable to agree on a price.

In January 2004, Faith Temple announced that it had executed a purchase contract for the Groos parcel. The Town, which claims to have been surprised by Faith Temple's action, announced on April 13, 2004 its intention to condemn the Groos parcel and annex it to the Park. Shortly thereafter, the Town commenced condemnation proceedings concerning the parcel pursuant to New York's Eminent Domain Procedure Law ("EDPL").

Faith Temple–which claims that it was surprised and dismayed by the Town's decision to condemn the parcel–brought this action on July 30, 2004.[1] Faith Temple asserts nine causes of

---

[1] It appears that prior to Faith Temple's execution of the purchase contract, there had been some discussions between representatives of Faith Temple and the Town concerning Faith Temple's desire to expand its facilities within Brighton, but the content and extent of those discussions are unclear. Faith Temple contends that it had apprised the Town of its plans to obtain the Groos parcel, and that the Town had voiced no objection. Defendants claim that Faith
(continued...)

action, six of which are based on alleged violations of the United States and New York State Constitutions, and three of which allege violations of RLUIPA. Faith Temple seeks a number of forms of relief, but primarily it seeks an injunction barring the Town from pursuing any eminent domain proceedings concerning the Groos parcel.

In addition, Faith Temple commenced a proceeding under EDPL § 207 in the Appellate Division of the New York State Supreme Court to review the Town's determination to condemn the Groos parcel. On April 29, 2005, the Appellate Division issued a Memorandum and Order confirming the Town's determination, and dismissing Faith Temple's petition. The Appellate Division found, *inter alia*, that Faith Temple "ha[d] failed to sustain its burden of establishing that the determination was without foundation and baseless," and "ha[d] not demonstrated that the manner in which [the Town] proceeded was in bad faith." *Faith Temple Church v. Town of Brighton*, 17 A.D.3d 1072, 1073 (4th Dep't 2005) (internal quotes omitted). No attempt was made to appeal that decision.

In so ruling, the state court also held that it lacked "authority under the EDPL to consider [Faith Temple's] causes of action under the Religious Land Use and Institutionalized Persons Act ... ." *Id.* Pursuant to its authority under EDPL § 207(C)(1) to review whether "the [eminent domain] proceeding was in conformity with the federal and state constitutions," however, the court also "review[ed] the record to determine whether the proceeding conforms with the Free Exercise Clause

---

[1](...continued)
Temple had expressed only a generalized intent to expand its operations, but had never provided any specifics in that regard, including the proposed location of the expansion.

of the First Amendment to the United States Constitution" and its counterpart in the New York State Constitution. *Id.* at 1074. The court concluded that Faith Temple

> ha[d] failed to demonstrate ... that the proposed condemnation violates the Free Exercise Clause or its New York counterpart. The application of a statute such as the EDPL, an otherwise valid, neutral, and generally applicable law, does not ordinarily violate the Free Exercise Clause. Generally, a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice. Here, the record demonstrates that the Town's actions are neutral and generally applicable, and [Faith Temple] has failed to demonstrate that the proposed condemnation imposes a substantial burden on its exercise of religion.

*Id.* (internal quotes and citations omitted).

At this point, then, the eminent domain proceedings remain pending, although–aside from the Appellate Division's decision–it does not appear that any significant steps have been taken to advance those proceedings. In addition, in April 2005, Faith Temple informed the Court of its intention to close on the Groos parcel, and apparently that has occurred, so that Faith Temple now holds actual title to the property.

## DISCUSSION

### I. RLUIPA–Background and General Principles

In *Employment Div., Dept. of Human Resources of Or. v. Smith*, 494 U.S. 872 (1990), the Supreme Court held that the Free Exercise Clause of the First Amendment–which provides that "Congress shall make no law ... prohibiting the free exercise [of religion]"–does not inhibit enforcement of otherwise valid laws of general application that incidentally burden religious conduct. *Id.* at 878-882. Congress responded by passing the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq.* RFRA prohibited governments from "substantially

burdening" a person's exercise of religion even if the burden results from a rule of general applicability, unless the government can demonstrate that the burden is: (1) in the furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that compelling governmental interest.

In *City of Boerne v. Flores*, 521 U.S. 507 (1997), however, the Supreme Court ruled that certain provisions of RFRA were unconstitutional because their enactment exceeded Congress's enforcement powers under the Fourteenth Amendment. Congress again responded, this time by enacting RLUIPA in 2000. "Less sweeping than RFRA, and invoking federal authority under the Spending and Commerce Clauses, RLUIPA targets two areas: Section 2 of the Act concerns land-use regulation, 42 U.S.C. § 2000cc;  § 3 relates to religious exercise by institutionalized persons, § 2000cc-1." *Cutter v. Wilkinson*, ___ U.S. ___, 125 S.Ct. 2113, 2118 (2005).[2]

Insofar as it pertains to the case at bar, RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). "Land use regulation" is defined as: "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an

---

[2] At oral argument on defendants' motion, both sides agreed that the Court has subject matter jurisdiction under the Commerce Clause provision of RLUIPA, 42 U.S.C. § 2000cc(a)(2)(B).

ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. § 2000cc-5(5).

**II. Whether the Town's Eminent Domain Proceedings Constitute a "Land Use Regulation"**

The basis for defendants' summary judgment motion is their contention that the eminent domain proceedings by which the Town seeks to condemn the Groos parcel do not constitute a "land use regulation" as that term is defined by RLUIPA, and that therefore RLUIPA is inapplicable to this case. Faith Temple responds that RLUIPA does cover the "misuse" of eminent domain, which plaintiff alleges is what has occurred here.

I begin my analysis, as I must, with the language of the statute. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 254 (2004). By its terms, RLUIPA applies only to government "impos[ition] or implement[ation of] a land use regulation ... ." In addition, under RLUIPA's definition of "land use regulation," "a government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest." *Prater v. City of Burnside*, 289 F.3d 417, 434 (6th Cir. 2002) (citing 42 U.S.C. § 2000cc-5(5)).

The first question, then, is whether, on the facts before me, the eminent domain proceedings brought by the Town constitute "a zoning or landmarking law, or the application of such a law ... ." Faith Temple does not appear to contend, nor do I find, that the Town's condemnation of the Groos parcel would involve a "landmarking law." Landmarking laws generally involve the "regulat[ion] and restrict[ion of] certain areas as national historic landmarks, special historic sites, places and

buildings for the purpose of conservation, protection, enhancement and perpetuation of these places of natural heritage." N.Y. Village L. § 7-700. Nothing of that nature is involved here.

The eminent domain proceedings here also do not amount to a "zoning law" or "the application of such a law." In New York, towns are authorized by statute to enact zoning laws "to *regulate* and *restrict* the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes ..." within their borders. N.Y. Town L. § 261 (emphasis added); *see also* N.Y. Gen. City L. §§ 20(24), 20(25) (dealing with zoning powers of cities). In contrast, local governments in New York "have power to *take* by eminent domain private property within their boundaries for public use ... ." N.Y. Const. Art. IX § 1(e) (emphasis added). These are, then, two distinct concepts, both of which involve land, but in very different ways. *See East Thirteenth Street Comm. Ass'n v. New York State Urban Redevelopment Corp.*, 84 N.Y.2d 287, 296 (1994) (stating that "[t]here are notable differences between zoning statutes and eminent domain proceedings").[3]

Given these differences between zoning and eminent domain, it seems very unlikely that Congress assumed that courts would interpret RLUIPA's reference to zoning laws as including

---

[3] The recognition of eminent domain as an inherent right of the sovereign predates the Constitution, and was described at least as early as the seventeenth-century jurist Hugo Grotius. *See Welch v. Tennessee Valley Auth.*, 108 F.2d 95, 98 (6th Cir. 1939) (noting that "[t]he phrase 'eminent domain' appears to have originated with Grotius who carefully described its nature, and the power is universal and as old as political society. The American Constitution did not change its scope or nature, but simply embodied it in the fundamental law") (citations omitted). Zoning laws, on the other hand, are a relatively modern invention, and were generally unknown prior to the turn of the twentieth century. *See Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 386 (1926) ("Building zone laws are of modern origin. They began in this country about 25 years ago").

eminent domain proceedings as well. The simple fact is that Congress chose to limit the application of RLUIPA to cases involving "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land ... ." Conspicuously absent is any mention of eminent domain. Eminent domain is hardly an arcane or little-known concept, and the Court will not assume that Congress simply overlooked it when drafting RLUIPA.

In support of their respective positions, both sides have pointed to certain portions of the legislative history of RLUIPA regarding its scope of coverage with respect to land use regulations. Although the legislative history of a statute is relevant to the process of statutory interpretation, courts generally "do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147-48, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994); *see also Daniel v. American Bd. of Emergency Medicine*, ___ F.3d ___, 2005 WL 2470530, at *8 (2d Cir. 2005) ("Only if we discern ambiguity [in the language of a statute] do we resort first to canons of statutory construction, and, if the meaning remains ambiguous, to legislative history") (citation omitted). Here, the language of RLUIPA is quite clear: it applies to "zoning or landmarking law[s], or the application of such ... law[s] ... ." There is no need to resort to legislative history. By its terms, then, RLUIPA does not apply to eminent domain proceedings.

Even if there were some ambiguity in this regard, the legislative history sheds little if any light on the applicability of RLUIPA to eminent domain. The legislative history indicates that Congress was concerned about local governments' use of their zoning authority to discriminate against religious groups by making it difficult or impossible for them to build places of worship or other facilities, *see*, *e.g.*, 146 Cong. Rec. E1564, 2000 WL 1369379 (Sept. 21, 2000) (statement of

Rep. Hyde regarding "zoning conflicts between churches and cities"); 146 Cong. Rec. E1234, 2000 WL 976598 (July 13, 2000) (statement of Rep. Canady noting instances where a municipality "intentionally change[d] a zone to exclude a church"), but appears to contain no references to eminent domain.

In its opposition to defendants' motion, Faith Temple argues that the reason for the dearth of authority on this issue is that few towns "have acted so egregiously" as Brighton by condemning land, allegedly to prevent its use by a church. The legislative history does indicate that Congress was primarily concerned about conflicts over zoning, and that eminent domain abuse was not perceived to be a cause for concern in drafting RLUIPA. That does not mean, though, that the Court can speculate about whether Congress would have wanted RLUIPA to apply to eminent domain proceedings had it foreseen a situation such as the one that gave rise to this action. The statute says what it says. Congress made no mention of eminent domain, and it is not the Court's proper function to add langugage to the statute in order to stretch its applicability to suit the aspirations of a particular litigant.

Moreover, Congress may have had sound reasons for excluding eminent domain from RLUIPA's scope. Whereas zoning laws typically regulate and restrict how private landowners use their property, eminent domain has historically been limited to takings of property for public use.[4]

---

[4] Although the Supreme Court in *Kelo v. City of New London, Connecticut*, ___ U.S. ___, 125 S.Ct. 2655 (2005), adopted an expansive definition of "public use" (essentially equating it with any "use" that "serves a 'public purpose,'" *see* 125 S.Ct. at 2663, it nevertheless reaffirmed that the public-use requirement must be met in order to justify a taking by eminent domain. At any rate, since *Kelo* was decided several years after the passage of RLUIPA, any broadening of the definition of "public use" that it may have effected is immaterial to Congress's intent in drafting RLUIPA.

In addition, while zoning laws are relatively "painless" for municipalities to enact, property taken by condemnation literally comes at a price: the fair market value of the property, which must be paid out of the public fisc. *See, e.g., United States v. 6.45 Acres of Land*, 409 F.3d 139, 145 (3d Cir. 2005); *Matter of Investors Funding Corp. of New York*, 592 F.2d 134, 136 (2d Cir. 1979); *United States v. Certain Land at Irving Place and 16th St.*, 415 F.2d 265, 269-70 (2d Cir. 1969).

Given these differences between zoning and eminent domain, Congress may well have had no desire to expand RLUIPA's coverage to include takings by eminent domain. Congress may have wanted to avoid the possibility of religious institutions interfering with municipalities' ability to *take* land in order to put it to *public* use, as opposed to simply *restricting* the types of *private* uses to which land can be put. *See Aaron v. Target Corp.*, 357 F.3d 768, 777 (8th Cir. 2004) ("Eminent domain proceedings have long been recognized as an important state interest") (citing *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959)). In addition, both the built-in disincentive of having to pay fair market value, as well as the hurdle of having to demonstrate a legitimate public use, mean that town officials harboring some discriminatory animus against a religious group would not generally be expected to use eminent domain as a tool to prevent the group from erecting a church within the town.[5]

Faith Temple also argues that the Town's attempt to condemn the Groos parcel falls within RLUIPA's coverage of the "application" of a zoning law because the condemnation is intended to effectuate the Town's Comprehensive Plan, which calls for eastward expansion of the Park. In effect, Faith Temple argues, the Comprehensive Plan is a type of zoning system, and since the condemnation of the Groos parcel is tied to that plan, it amounts to the application of a zoning law.

---

[5]I note that there is no dispute in this case that the Town's intended use for the Groos parcel–expansion of the Park–is a legitimate public use.

In my view, however, the connection between the eminent domain proceedings and any of the Town's zoning laws is too attenuated to constitute the application of a zoning law. Given the plain language of the statute, the fact that the proposed taking here may have *some* relationship to zoning within the Town of Brighton is not enough.

In support of its argument, the Town relies on *Cottonwood Christian Ctr. v. Cypress Dev. Agency*, 218 F.Supp.2d 1203 (C.D.Cal. 2002), in which the court held that the defendant city's zoning and eminent domain actions substantially burdened the plaintiff church's exercise of religion in violation of RLUIPA because the plaintiff was unable to practice its religious beliefs in its existing location. The *Cottonwood* court did state in a footnote that the defendant's "authority to exercise eminent domain to contravene blight ... is based on a zoning system developed by the City ...," *id.* at 1221 n. 7, but, to the extent that this statement can be read to suggest that any exercise of eminent domain that relates in some way to a zoning plan falls within the scope of RLUIPA, I agree with another district court's recent conclusion that the *Cottonwood* court's reasoning is not "persuasive as it relates to such an attenuated relationship between eminent domain and zoning." *St. John's United Church of Christ v. City of Chicago*, ___ F.Supp.2d ___, 2005 WL 3078174, at * 11 n. 7 (N.D.Ill. Nov. 16, 2005).[6]

In *St. John's*, a church and several other plaintiffs sued the City of Chicago, the State of Illinois, and the Federal Aviation Administration over certain actions that the defendants had taken

---

[6]The court in *St. John's* also noted that the plaintiffs in that case had cited this Court's January 12, 2005 decision in this case, in which I denied defendants' motion to dismiss on abstention grounds and deferred deciding Faith Temple's motion for a preliminary injunction pending a factual hearing. The *St. John's* court stated that this Court had "proceeded under the assumption that" RLUIPA applied. 2005 WL 3078174, at *11 n. 6. In that decision, however, I did not explicitly make any such assumption, and if my decision could be interpreted as implicitly making such an assumption, it was for purposes of the preliminary injunction motion only. Nothing in that prior decision, then, is inconsistent with my ruling today.

to facilitate the planned expansion of O'Hare International Airport.  Among the plaintiffs' claims was the church's claim that Chicago would violate RLUIPA if it succeeded in condemning land that was the site of a church-owned cemetery without first demonstrating that its acquisition of the land was the least restrictive means available to further a compelling governmental interest.  The court dismissed that claim on the ground that RLUIPA did not apply to Chicago's actions to obtain the property through eminent domain.  In so ruling, the court stated that none of the plaintiffs' allegations indicated "that the City's authority to acquire the land stems from any zoning regulations or landmarking law ... ."  *Id.* at *11.

The court in *St. John's* also rejected the church's arguments that Chicago's "actions can be linked to zoning regulations" because Chicago's proposed actions would impose restrictions on the church's use or development of the cemetery, and that those restrictions were thus "attempts to regulate the land and so are an act of zoning."  The court stated that

> [t]o call the acquisition of [the cemetery] a restriction on St. John's use of the land ... is more than mere understatement; it is, in fact, an incorrect classification of the actions at issue in this case.  Chicago is not seeking to restrict the uses of [the cemetery]–it is planning on acquiring the land pursuant to its eminent domain authority and then using it for the public purpose of expanding the airport.  Land use regulations limit the use of property.  Condemnation is, in one sense, the ultimate limitation on the use of property.  It does not follow, however, that condemnation is a land use regulation as this term is used in the statute.  Congress could have included "takings" within the reach of RLUIPA but did not.  This Court is no persuaded that it should construe the concept of zoning so broadly that any acquisition of land by the City pursuant to eminent domain proceedings is an act of zoning.

*Id.* at *11.

I agree with that reasoning, and find it applicable here.  Defendants' actions may have a relationship to land use, in the sense that the Town intends that the Groos parcel be used as public parkland, but the Town's employment of eminent domain to obtain the land is simply too far removed from any zoning regulations to fall with the purview of RLUIPA.  In most, if not all, condemnation proceedings, the government must demonstrate that the purpose of the taking is to put

the subject property to "public use." *Kelo*, 125 S.Ct. at 2661-62. Simply because condemnation and zoning both ultimately may affect or restrict the use to which land is put does not make them synonymous. Again, both zoning and eminent domain are well-recognized, distinct concepts, and at the stroke of a pen Congress could have included both within the coverage of RLUIPA. It did not do so, and it is not for this Court to judicially amend RLUIPA to "correct" Congress's omission.

Finally, Faith Temple also relies upon RLUIPA's directive that "[t]his chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution," 42 U.S.C. § 2000cc-3(g), and upon the general principle that courts should construe remedial statutes broadly. *See, e.g.*, *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 149 (2d Cir. 2000). To read RLUIPA as covering the proceedings at issue here, however, would go far beyond a mere broad construction of the statute; it would add to the statute terms that–for whatever reason–Congress chose not to include. *See St. John's*, 2005 WL 3078174, at *12 ("Plaintiffs' contention that all condemnation proceedings are land use regulations dealing with zoning ... is not an attempt to construe the statute broadly but rather is an attempt to rewrite it").[7]

---

[7]As stated, defendants have moved for "partial" summary judgment dismissing plaintiff's claims under RLUIPA. Defendants have not moved to dismiss plaintiff's other claims alleging federal and state constitutional claims.

At oral argument on defendants' motion, counsel for Faith Temple indicated, in response to a question from the Court, that the Appellate Division's April 29, 2005 decision would have res judicata effect as to plaintiff's constitutional claims, so that if this Court dismissed the RLUIPA claims, that would effectively end the entire case. In a letter to the Court dated November 22, 2005, however, plaintiff's counsel appears to backtrack from that assertion, for he states that the Appellate Division had no facts before it from which it could determine whether the Town's proposed condemnation would impose a substantial burden on Faith Temple's exercise of religion.

Res judicata ordinarily applies "if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Anaconda-Ericsson Inc. v. Hessen*, 762 F.2d 185, 190 (2d Cir. 1985). On the face of it, the Appellate Division's decision certainly seems

(continued...)

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #64) is granted, and plaintiff's ninth, tenth and eleventh causes of action are dismissed.[8]

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
December 19, 2005.

---

[7](...continued)
to meet all these criteria. Because this issue has not been briefed, however, and–since defendants have only moved against plaintiff's RLUIPA claims–is not actually before the Court, I do not decide at this juncture whether plaintiff's remaining claims are subject to dismissal based on res judicata or other grounds.

[8]The complaint actually sets forth only nine causes of action. The first six, alleging constitutional violations, are enumerated the first through sixth causes of action. For no apparent reason, the remaining three claims are labeled the ninth, tenth and eleventh causes of action. No cause of action is captioned as the seventh or eighth. In this Decision and Order, however, the Court will use the captions utilized by plaintiff in the complaint.